UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

Eastern District of Kentucky
**FILED**

MAR 0 9 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-202-JBC

JUDY RICE,                                                                           PLAINTIFF

V.                      **PROPOSED FINDINGS OF FACT
                          AND RECOMMENDATION**

JO ANNE B. BARNHART, Commissioner,
  Social Security Administration,                                           DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff Judy Rice, by counsel, brings this action against the Commissioner of the Social Security Administration, under 42 U.S.C. § 405(g), for judicial review of the Commissioner's decision that based on plaintiff's application for Disability Insurance Benefits (DIB) filed on August 7, 2003, plaintiff was not under a "disability" and was not entitled to disability benefits.

This matter is before the court on cross-motions for summary judgment  [DE ##11, 12]. These motions have been fully briefed and are ripe for review.

By Order of December 16, 2006, the district court referred this matter to the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for a report and recommendation on dispositive matters.

## II. ADMINISTRATIVE PROCEEDINGS

Plaintiff alleges that she became disabled on March 3, 2002, due to arthritis and fibromyalgia. (Tr. 17).  Plaintiff has a high school education and has past relevant work experience (PRW) as a part-time retail sales clerk in a video store.

Plaintiff's DIB application was denied, resulting in an ALJ hearing held on February 10, 2005.  On June 24, 2005, ALJ John M. Lawrence issued a hearing decision unfavorable to plaintiff. (Tr. 17-25).

Subsequently, on April 27, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 9-11), resulting in the filing of this action for judicial review of the Commissioner's decision.

In summary, the ALJ found that (1) claimant has not engaged in substantial gainful activity since her alleged onset date; (2) claimant's fibromyalgia versus arthritis is a "severe" impairment, based upon the requirements in the Regulations; however, this medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; (3) claimant's allegations concerning her limitations are not totally credible; (4) claimant has the residual functional capacity (RFC) to perform substantially all of the full range of light work; (5) claimant is unable to perform her PRW; (6) claimant has no transferable skills from any PRW and/or transferability of skills is not an issue in this case; (7) based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.13, when claimant turned 50, and Rule 202.20 prior thereto, directs a conclusion of "not disabled;" (8) claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations; and (9) claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of the ALJ's decision, June 24, 2005. (17-25).

### III. APPLICABLE LAW

The scope of judicial review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence, 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" means such evidence as a reasonable person might accept as adequate to support a conclusion. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir. 1990), (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981, cert. denied, 461 U.S. 957 (1983).

In reviewing a case for substantial evidence, the court may not try the case <u>de novo</u>, resolve conflicts in evidence, or decide questions of credibility. <u>Garner v. Heckler</u>, 745 F.2d 383 (6th Cir. 1984).

## IV. THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

In support of her motion for summary judgment, plaintiff contends that (1) the ALJ reached inconsistent findings when he found that although plaintiff could not return to her past relevant work as a part-time video store clerk, she retained the residual functional capacity (RFC) to perform the full range of light work, with no restrictions; (2) the ALJ erred in finding that plaintiff retained the RFC to perform the full range of light work; (3) the ALJ erred by rejecting the opinion of plaintiff's treating rheumatologist; (4) the ALJ erred by rejecting, without considering, the medical evidence from the physical therapist; and (5) the ALJ erred in finding that plaintiff's testimony concerning her pain and limitations was not totally credible. For these reasons, plaintiff submits that the Commissioner's decision to deny her claim for disability benefits is unsupported by substantial evidence of record and that this matter should be remanded for a new ALJ hearing.

In response, the defendant submits that the Commissioner's decision is supported by substantial evidence and should be affirmed.

### Discussion

In considering this matter, the Magistrate Judge has reviewed, in addition to the memoranda filed in support of each party's motion for summary judgment, the hearing decision, the medical evidence of record, and the transcript of the ALJ hearing in this case.

## A.    ALJ's findings concerning plaintiff's RFC and ability to perform her PRW

Plaintiff asserts that the ALJ reached inconsistent findings when he found that although plaintiff could not return to her past relevant work as a part-time video store clerk, she retained the RFC to perform the full range of light work, with no restrictions. In support of this argument, plaintiff points out that the Dictionary of Occupational Titles ("DOT") categorizes the job of film-rental clerk as a light exertional job. (Tr. 361-63). Based on this classification, plaintiff contends

that the ALJ's finding that plaintiff cannot return to her PRW and that plaintiff retains the RFC to perform the full range of light work, with no restrictions, are contradictory and inconsistent findings.

In response, the defendant argues that the fact that the DOT categorizes plaintiff's PRW as light level work does not mean that the ALJ's RFC finding was incorrect because there are three possible tests for determining whether a claimant retains the RFC to perform her PRW: (1) evaluating the job based on the broad generic, occupational classification of that job; (2) evaluating the job duties peculiar to that job as the claimant actually performed it; or (3) evaluating the duties of the job as ordinarily required by employers throughout the national economy. See 20 C.F.R. § 404.1520(e); SSR 82-61. The defendant appears to argue that the description in the work history report and plaintiff's testimony at the ALJ hearing provide a sufficient description of her work that would support the ALJ's finding that she is unable to return to her PRW.

### Discussion/Analysis

The work history report, completed by the plaintiff on August 22, 2003, reflects that in performing her part-time job as a film rental clerk in the video store, the heaviest weight lifted both occasionally and frequently was less than 10 pounds (Tr. 73). Plaintiff also indicated that this job involved constant bending, reaching up and down pulling movies, and that she was most always busy. Id. Thus, this work history report, at least in terms of weight lifted and/or carried, indicates that a person who is capable of performing light work with no restrictions, as the ALJ found, would be able to perform this particular job as a film rental clerk in the video store, since the job duties as described on the work history report do not exceed the weight requirements for light exertional work. Nevertheless, the ALJ found that plaintiff could not return to her former job in the video store, even though the ALJ simultaneously found that plaintiff retained the RFC to perform the full range of light level work with no restrictions.

Consequently, it appears that the ALJ's findings that plaintiff cannot return to her former job in the video store (which the DOT classifies as a light level job, and, based on the work history report is a light level job), but that she retains the RFC to perform the full range of light work, with

4

no restrictions, are inconsistent and contradictory findings. It is possible that the ALJ's finding that plaintiff was unable to return to her job in the video store is based on her testimony at the ALJ hearing that the heaviest amount of weight that she had to lift in performing her job in the video store was 20 to 25 pounds (Tr. 371), which would place this job in the category of medium level work. However, the ALJ does not explain in his decision the rationale underlying his findings that although plaintiff could not return to her former job in the video store, she retained the RFC to perform the full range of light work with no restrictions. Additionally, the ALJ did not question plaintiff at the ALJ hearing concerning the discrepancy between her testimony at the ALJ hearing that in performing her job at the video store, she had to lift between 20 and 25 pounds, and the work history report wherein she indicated that the most weight lifted in this job was fewer than 10 pounds.

The majority of the evidence of record concerning plaintiff's former job in the video store (the DOT classification and the work history report) suggests that this job is a light level job and that if plaintiff retains the RFC to perform light level work, with no restrictions, she should also be able to return to her former job in the video store. If that is the case, the ALJ's finding that plaintiff is unable to return to her former in the video store is unsupported by substantial evidence. Plaintiff's testimony that in performing her job in the video store, she was required to lift between 20 and 25 pounds may be the evidence on which the ALJ based his finding that she could not return to this job; however, the ALJ does not explain the basis for this finding.

Given the remainder of the evidence of record concerning the requirements of the job in the video store, the evidence from plaintiff at the ALJ hearing concerning the amount of weight she was required to lift in her job at the video store may be an anomaly. Plaintiff could have been mistaken either when she completed the work history report and indicated that she was required to lift less than 10 pounds, either occasionally or frequently, in performing her job at the video store or during her testimony at the ALJ hearing when she testified that the most weight lifted was 20 to 25 pounds. However, the ALJ did not question plaintiff during the ALJ hearing about this weight discrepancy and ask her which account was more accurate. and this discrepancy remains unresolved. Thus, it is

not possible to discern from the ALJ's decision whether his finding that plaintiff could not return to her PRW was based on (1) an evaluation of the job based on the broad generic, occupational classification of that job; (2) an evaluation of the job duties peculiar to that job as plaintiff actually performed it; or (3) an evaluation of the duties of the job as ordinarily required by employers throughout the national economy.

For these reasons, the Magistrate Judge concludes that it is not possible, at this juncture, to determine whether the ALJ's finding that plaintiff is unable to perform her PRW and the ALJ's finding that plaintiff has the RFC to perform the full range of light work, with no restrictions, are reconcilable, even though they appear to be inconsistent and contradictory findings.

**B.     Weight given to the opinion of plaintiff's treating physician**

Plaintiff asserts that the ALJ erred by rejecting the opinion of her treating rheumatologist, Dr. Gary Margolies.

Plaintiff's primary care physician, R. Finley Hendrickson, M.D., referred plaintiff to Dr. Margolies, a specialist in rheumatology. Dr. Margolies saw plaintiff on April 2, 2003, May 6, 2003, March 1, 2004, September 1, 2004, January 13, 2005, and January 28, 2005. The ALJ rejected a Fibromyalgia Questionnaire completed by Dr. Margolies on January 13, 2005 (Exhibit 21-F) because "Dr. Margolies treated the claimant only 3 times in 2003 and 2004, and 2 times in 2005, and his conclusions are based on subjective tests." (Tr. 20).

Ordinarily, the opinion of a treating physician is entitled to considerable weight; however, if the physician's opinion is brief and conclusory and is not supported by clinical and laboratory findings, it is fully within the discretion of the ALJ to reject that opinion. See 20 C.F.R. § 404.1527(d)(3) (2003); Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 287 (6th Cir. 1994); Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir. 1993). A physician's opinion may also be rejected when there are contrary opinions by other sources or if the opinion is internally inconsistent. See 20 C.F.R. § 404.1527(d)(4) (2003); Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1370 (6th Cir. 1991). Additionally, the opinions of specialists are to be given greater weight

6

than those of non-specialists. <u>Sherrill v. Secretary of Health and Human Services</u>, 757 F.2d 803 (6th Cir. 1985). Furthermore, conclusory opinions, opinions outside a physician's area of expertise, or opinions of disability, or on matters reserved for the Commissioner may be rejected and are not accorded controlling weight. 20 C.F.R. § 404.1527(d)(3), (e) (2003); <u>Cutlip</u>, 25 F.3d at 287. <u>See also</u> Social Security Ruling (SSR) 96-2p (it is error to give an opinion controlling weight, simply because it is the opinion of a treating source, if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence of record).

Plaintiff contends that the ALJ erred by not accepting the Fibromyalgia Questionnaire completed by Dr. Margolies on January 13, 2005. Plaintiff argues that Dr. Margolies' medical records contain well-described information concerning her history, symptoms, treatment, physical examination, diagnosis and prognosis and that Dr. Margolies followed the protocol for establishing fibromyalgia by examining and referencing her tender points repeatedly, which is objective evidence of her condition. Plaintiff also points out that Dr. Margolies noted other abnormalities like reduced range of motion and that since he is a treating rheumatologist, a specialist in the field of fibromyalgia, the ALJ's finding that Dr. Margolies' opinion was not entitled to substantial weight is erroneous.

In response to this argument, the defendant notes that the ALJ has the right to determine what weight he gives to a medical source, <u>see</u> 20 C.F.R. § 404.1527(d), and that while the opinion of a treating source is entitled to great weight, it must still be supported by objective medical evidence and be consistent with the record as a whole. <u>See</u> <u>Cutlip</u>, 25 F.3d at 287; 20 C.F.R. §§ 404.1527(d)(3), (d)(4). The defendant also asserts that Dr. Margolies' conclusions in the Fibromyalgia Questionnaire were based on subjective tests (Tr. 20, See Tr. 333-334, 338-341), and that this questionnaire simply dealt with plaintiff's symptoms and related problems. Defendant argues that Dr. Margolies did not provide an actual opinion on Plaintiff's ability to function, and that plaintiff's other treating physician, Dr. Hendrickson did not agree with Dr. Margolies' diagnosis of

fibromyalgia, diagnosing plaintiff with arthritis (Tr. 20, 230) rather than fibromyalgia. Defendant also argues that while the ALJ agreed with Dr. Margolies' finding that plaintiff has fibromyalgia, Dr. Margolies' treatment records still did not provide objective evidence that would support a finding of disability.

### Discussion/Analysis

In considering this matter, it must be kept in mind that the opinions of specialists are to be given greater weight than those of non-specialists. Sherrill v. Secretary of Health and Human Services, 757 F.2d 803 (6th Cir. 1985). Thus, since Dr. Margolies is a specialist in rheumatology, the ALJ was obligated to give greater weight to his opinion than to the opinions of non-specialists, such as Dr. Hendrickson, who is plaintiff's primary care physician but is not a specialist in rheumatology. In fact, Dr. Hendrickson referred plaintiff to Dr. Margolies. The defendant correctly points out that Dr. Hendrickson did not agree with Dr. Margolies' diagnosis of fibromyalgia, concluding instead that plaintiff had arthritis; however, that evidence does not change the fact that Dr. Margolies is the specialist in rheumatology and Dr. Hendrickson is not.

The ALJ declined to accept Dr. Margolies' Fibromyalgia Questionnaire for two reasons: (1) Dr. Margolies had only seen, examined, and treated plaintiff a total of five times, and (2) his conclusions were based on subjective tests. (Tr. 20). A review of Dr. Margolies' office notes reflects that in reaching a diagnosis of fibromyalgia, he conducted a musculoskeletal examination which revealed tender points, which varied from examination to examination, but which numbered 18 of 18 on May 6, 2003. As plaintiff points out, such an examination is the protocol for establishing fibromyalgia; thus, it is an *objective* examination for fibromyalgia.

Consequently, for these reasons, the Magistrate Judge concludes that the ALJ erred by not accepting the Fibromyalgia Questionnaire completed by Dr. Margolies, plaintiff's treating rheumatologist, and that the ALJ erred by not giving greater weight to the opinion of Dr. Margolies.

C.     **Plaintiff's work as a caregiver for her mother and as a babysitter for her grandson**

The record reflects that plaintiff was a caregiver for her mother, an Alzheimer's or dementia

patient, from 1999 until her death in March of 2002, and that plaintiff has attempted to babysit her

grandson, as seen from the following excerpt from the ALJ's decision:

> The Administrative Law Judge notes that from the period 1999 to 2002, the claimant
> personally cared for her mother who died in March 2002.  Note: The claimant's
> alleged onset of disability is March 3, 2002.  The claimant performed the work of
> caring for her mother 24/7.  Also, the record shows that on April 2, 2003, the
> claimant was babysitting for her grandchild 5 days per week (Exhibit 7F).  But the
> claimant said at hearing that she was unable to continue babysitting and only did it
> for about 3 weeks.  Her son, called as a witness by the Administrative Law Judge,
> seemed to confirm the claimant's testimony.  The claimant did not reveal the 3 year,
> 24/7, care she rendered for her sick mother, or the attempted baby sitting, on direct
> examination by her attorney.  When the Administrative Law Judge questioned her,
> she denied doing any other work after 1999 when the video store closed, until pressed
> considerably.

Tr. 19.

A review of the hearing transcript reflects that the ALJ was annoyed by the fact that plaintiff

did not disclose during her direct examination by counsel that she had been a 24/7 caregiver for her

mother for three years prior to her mother's death or that she had performed babysitting work for her

grandson subsequent to her work at the video store; this information was revealed during the ALJ's

subsequent questioning of the plaintiff.  The ALJ chastised both plaintiff and her counsel during the

ALJ hearing concerning plaintiff's failure to disclose the caregiver work and the babysitting work.

Plaintiff explained that she answered the question the way she did because she understood the

question to be asking for all public work subsequent to her job at the video store and that she did not

consider either the caregiver work or babysitting her grandson to be public work.

The transcript reflects that the ALJ was displeased with both plaintiff and her counsel and

intimated that plaintiff had deliberately tried to avoid disclosing the information concerning her

caregiver work and her babysitting work.  Reading between the lines of the transcript of the ALJ

hearing, it appears that the ALJ's displeasure with plaintiff and her counsel may have compromised

his objectiveness in this matter.

## V. CONCLUSION

Having reviewed the administrative record, including transcript of the ALJ hearing, the medical evidence, the cross-motions for summary judgment, and the applicable law concerning judicial review of the Commissioner's decision, the Magistrate Judge concludes that the Commissioner's denial decision is not supported by substantial evidence for the following two reasons: (1) the ALJ's finding that plaintiff is unable to return to her former job in the video store, which appears to be light level work, is inconsistent with and contrary to the ALJ's finding that the plaintiff retains the RFC to perform the full range of light work, with no restrictions, and (2) the ALJ erred by not giving greater weight to the opinion of Dr. Gary Margolies, a treating physician who is also a specialist in rheumatology, and by rejecting Dr. Margolies' Fibromyalgia Questionnaire. Additionally, based on comments the ALJ made to plaintiff and her counsel during the ALJ hearing, it appears that the ALJ may have lost his objectivity and may have rendered a biased decision.

Accordingly, **IT IS HEREBY RECOMMENDED** that defendant's motion for summary judgment [DE #12] be **DENIED**, that plaintiff's motion for summary judgment [DE #11] be **GRANTED** to the extent that this matter be **REMANDED** to the Commissioner for the purposes of conducting another ALJ hearing and that this new ALJ hearing be conducted by a different ALJ.

The Clerk of the Court shall forward a copy of the Magistrate Judge's Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140 (1985); Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R.Civ.P.

6(e).  A party may file a response to another party's objections within ten (10) days after being

served with a copy thereof.  Fed.R.Civ.P. 72(b).

This _____9ᵗʰ_____ day of March, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE

11